THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORLANDO RODRIGUEZ, Defendant-Appellant.

First District (2nd Division)   No. 82—533

Opinion filed August 30, 1983.—Rehearing denied October 4, 1983.

Frederick F. Cohn, of Chicago, and Michael J. Vitale, of Berwyn, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Stoioff, and James Klein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

In a bench trial, defendant, Orlando Rodriguez, was found guilty of two counts of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) and one count of attempted murder (Ill. Rev. Stat. 1979, ch. 38, par. 8—4). Defendant was sentenced to serve three concurrent six-year terms in the Illinois Department of Corrections. On appeal, defendant contends that he was denied his right to the effective assistance of counsel; that he was deprived of a fair hearing on his mo-

tion for a new trial; and that he was not proved guilty beyond a reasonable doubt of attempted murder. For the reasons hereinafter stated, we affirm.

Marc Fagot testified that at approximately 12:20 a.m. on October 8, 1980, he and his wife, Robin Fagot, were robbed at gunpoint by two young men, later identified as Alfredo Figueroa and George Del Valle, as they were walking home on Astor Street in Chicago. Figueroa and Del Valle took the victims' jewelry and money, fled north on Astor, then ran west into an alley toward a blue, four-door sedan. Marc pursued the two men into the alley. When Marc was about 20 feet behind them, Figueroa turned around, aimed his revolver straight at him and fired once. Marc saw a flash, dove to one side of the alley and heard a "whoosh." Figueroa and Del Valle then jumped into the back seat of the vehicle as it was driven away.

After a high speed automobile chase, the police apprehended defendant, Orlando Rodriguez, who was driving the blue sedan; codefendant, Ms. Lin Kuela, who was sitting in the front passenger seat; and Figueroa and Del Valle, who were in the back seat. The police searched the back seat and recovered some but not all of the property taken in the robbery. The police also found a .32 revolver on the street next to the front passenger door. The weapon had five unspent bullets and one spent cartridge. Marc was brought to the scene of the arrest where he identified his property, the handgun, Figueroa and Del Valle. He did not identify Rodriguez or Kuela.

Rodriguez told investigator Monroe Vollick that he was driving his automobile with his girlfriend, Lin Kuela, when two juveniles they knew, Alfredo Figueroa and George Del Valle, "flagged" them. The two juveniles asked Rodriguez "to drive [them] on a stickup." Figueroa had a gun and offered to share the proceeds of the robbery with Rodriguez. Rodriguez agreed.

Figueroa directed Rodriguez to drive to the area of State and Division and told him to park in an alley and wait for them. Figueroa and Del Valle then left the vehicle. About five to 10 minutes later, Rodriguez heard Figueroa and Del Valle running through the alley toward his car. Defendant saw Figueroa turn and fire a shot in the direction of a man who was chasing them. As Figueroa and Del Valle ran past the vehicle, Rodriguez drove the car at approximately the same speed they were running so that they could get into the car. Figueroa and Del Valle jumped into the back seat and Rodriguez drove out of the alley. Rodriguez tried to elude the police but his vehicle broke down and all four occupants were arrested.

I

■ Defendant first contends that he was denied his right to the effective assistance of counsel.

At trial, defendant was represented by attorney Charles Carroll. Defendant cites the following instances of Carroll's allegedly ineffective representation: Carroll did not adequately interview Rodriguez before proceeding to trial; did not conduct an independent investigation of the case; demanded trial when the term had not been running; did not arrange psychiatric or psychological interviews for defendant or have him confer with a social worker to determine his fitness to stand trial; was not aware that a severance had been granted; perfunctorily cross-examined the arresting officer; allowed the victim to reiterate his testimony on cross-examination; unsuccessfully attempted to impeach the officer to whom defendant made his oral statement; and filed a boiler plate motion for a new trial which, although this was a bench trial, asserted errors in jury instructions and referred to the prosecutor's inflammatory closing argument to the jury. While Carroll's representation of defendant may be subject to some criticism, we find it unnecessary to discuss each instance individually.

In Illinois, the inadequacy of a defendant's trial counsel entitles him to a new trial only if counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, *and* if this incompetence produced substantial prejudice to the defendant without which the result of the trial probably would have been different. (*People v. Corder* (1982), 103 Ill. App. 3d 434, 437, 431 N.E.2d 701.) It is defendant's burden to establish clearly both such incompetency and the resultant prejudice. *People v. Martin* (1983), 112 Ill. App. 3d 486, 494, 445 N.E.2d 795.

In the instant case, it appears that defendant was convicted on the basis of the extremely incriminating oral statement he gave to Investigator Vollick, the admissibility of which defendant does not challenge. In light of this compelling evidence of defendant's guilt, we are unable to perceive how trial counsel's allegedly ineffective representation substantially prejudiced defendant to the extent that the outcome of the trial would have been different. *People v. Berger* (1982), 109 Ill. App. 3d 1054, 1068, 441 N.E.2d 915.

In oral argument appellate counsel suggested that attorney Carroll may have been ineffective for not engaging in plea negotiations with the State's Attorney's office. Whether this constitutes evidence of ineffectiveness is questionable but need not be decided in this case because the record does not reflect whether Carroll in fact attempted

to negotiate defendant's plea to lesser charges (*e.g.,* robbery and/or aggravated assault) or whether defendant was amenable to such a disposition.

■ Defendant also contends that he was *"de facto"* represented by counsel who owed an obligation to his codefendant, Lin Kuela, and that these competing interests conflicted so as to deprive defendant of the undivided loyalty of his trial counsel.

The record reveals that attorney John Carroll originally sought to represent both defendant Rodriguez and his codefendant, Lin Kuela, in the instant matter. On September 18, 1981, the trial court ruled that John Carroll could not represent both defendants since Rodriguez' motion for severance previously had been granted.[1] John Carroll filed his appearance for Lin Kuela only and the cases were continued until September 25, 1981, at which time Charles Carroll, John's brother, filed an appearance for defendant Rodriguez. At the same time John Carroll was representing Lin Kuela in the instant case, he was also representing defendant Rodriguez in an unrelated civil matter and also in a criminal prosecution for aggravated assault in which Lin Kuela, John Carroll's client in the present matter, was the complaining witness.

Defendant now alleges that John Carroll was manipulating his brother to the extent that defendant was really represented by John Carroll. Defendant refers to Charles as John's "puppet brother" and argues that he and his codefendant were *"de facto"* represented by one counsel which representation resulted in a conflict of interest.

In support of this theory, defendant points out that prior to trial, John Carroll, through his partner, James McCarron, represented defendant Rodriguez on a motion to vacate a bond forfeiture. This, of course, was before the trial judge ordered separate counsel for defendant. In our judgment, defendant has not established that John Carroll in fact represented him in the trial of the present case. That Charles Carroll filed an answer to discovery for defendant which was identical to the one which John filed in behalf of his codefendant and may have respected his older brother's experience do not prove that Charles was his brother's "puppet." Charles and John were not partners at the time of defendant's trial, did not share offices or discuss strategy during the trial. Defendant does not contend, and we do not find, that Charles Carroll had any conflict of interest which would have prevented him from according defendant his undivided loyalty.

---

[1]Despite the granting of the motion for severance, both defendants were tried simultaneously before the same judge.

## II

■■ Defendant next contends that he was deprived of a fair hearing on the motion for a new trial because the trial court improperly invoked the work product privilege to deny defendant's request to produce documents in the possession of Charles and John Carroll, and because the court limited his inquiry into the fee arrangement between defendant and his trial counsel. We need not reach the merits of either claim of error, however, because defendant has failed to explain how the documents or the fee arrangement could have assisted him in proving prejudice in Charles Carroll's representation of him.

## III

■■ Finally, defendant contends that he was not proved guilty beyond a reasonable doubt of attempted murder. Defendant argues that the State failed to prove that he had the specific intent to kill.

The record establishes that defendant was tried for attempted murder on an accountability theory. To establish defendant's guilt, the State was required to prove that defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; that such participation occurred either before or during the perpetration of the crime; and that this participation was with the concurrent specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c); *People v. Dandridge* (1979), 79 Ill. App. 3d 693, 695.) A defendant's conduct *subsequent* to the commission of the offense may raise an inference of prior or concurrent participation. *People v. Posey* (1980), 83 Ill. App. 3d 885, 404 N.E.2d 482.

In his oral statement to the police, defendant admitted that he picked up two juveniles who wanted to commit a "stickup." Defendant knew one of the juveniles was armed and accepted their offer to share the proceeds of the robbery. Defendant drove them to the scene and waited for them in a nearby alley. About five to 10 minutes after the juveniles left defendant's car, he heard them running toward the car. He saw one of them turn, point a gun at the man who was pursuing them, and fire. As the two juveniles ran past his car, defendant started the vehicle and drove it at approximately the same speed they were running so that they could get into the car. Both men jumped into the back seat of the vehicle and defendant drove out of the alley. Defendant then unsuccessfully tried to flee from the police. In our judgment, *People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29, is controlling.

In *Kessler,* the defendant was the driver of a car used in commit-

ting a robbery. Defendant remained in the car while two codefendants entered the premises and shot one of the proprietors. The supreme court held that to convict the defendant of attempted murder, it was not necessary to prove that he had the specific intent to commit attempted murder, or that he committed an overt act in furtherance thereof. It was necessary to prove only that there was a common design to commit the robbery which encompassed the criminal act of attempted murder done in furtherance of the plan and intended act.

Here, the defendant agreed to assist in the perpetration of an armed robbery. The defendant knowingly and willingly aided and abetted the two juveniles in trying to escape from the scene of the crime after he knew that one of them had attempted to kill his pursuer. In our opinion, the attempted murder was committed in furtherance of the armed robbery, and defendant was properly convicted of both offenses.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.